United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

W.F.,[1]

Plaintiff,

v.

SSA COMMISSIONER,

Defendant.

Case No. 26-cv-02038-TSH

**ORDER RESOLVING SOCIAL SECURITY APPEAL**

Re: Dkt. Nos. 10, 12

## I. INTRODUCTION

Plaintiff W.F. seeks reversal and remand of the Social Security Administration's denial of his claim for disability insurance benefits under Title II of the Social Security Act. ECF No. 10. The Commissioner asks the Court to affirm. ECF No. 12. This action under 42 U.S.C. § 405(g) is governed by the Supplemental Rules for Social Security Actions and is presented for decision on the parties' briefs. *See* Fed. R. Civ. P. Supp. R. Soc. Sec. 1, 5; Civil L.R. 16-5. For the reasons stated below, the Court **REVERSES** the Commissioner's decision and **REMANDS** for further administrative proceedings.[2]

## II. PROCEDURAL HISTORY

On August 10, 2022, Plaintiff completed a Title II application for disability insurance benefits, alleging disability beginning March 23, 2022.[3] Administrative Record (AR) 246-52. Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). AR 105-09, 126-29. An ALJ held a hearing on April 16, 2024

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 4, 6.

[3] The Administrative Law Judge's decision identifies July 1, 2022 as the application date. AR 19.

and issued an unfavorable decision on July 25, 2024. AR 16-36; *see also* AR 37-78 (hearing transcript). The Appeals Council denied Plaintiff's request for review on January 30, 2026. AR 1. Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

## III. ISSUES FOR REVIEW

Plaintiff raises two issues on appeal: (1) the ALJ erred in her assessment of his visual and cardiac impairments; and (2) the ALJ erred in discrediting his statements.

## IV. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard, which is "not high," the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a]

reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up). The Ninth Circuit has since reiterated that a reviewing court may affirm only on grounds actually invoked by the agency and may not supply a rationale the ALJ did not give. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1203-04 (9th Cir. 2024).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(1)(A), (d)(2)(A); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since March 23, 2022, the alleged onset date. AR 21.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: Type II diabetes; psoriatic arthritis with arthralgia of the hands; osteoarthritis of the

United States District Court
Northern District of California

feet; and plantar fasciitis. AR 22.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 23.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity (RFC), defined as the most the claimant can still do despite their limitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ determined Plaintiff has the RFC

> to perform a limited range of medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant can lift/carry 20 pounds frequently and 50 pounds occasionally. He can sit for six hours and stand/walk for six hours during an eight-hour workday. He cannot climb ladders, ropes, or scaffolds. The claimant can frequently use his hands for handling, fingering, and feeling and can frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs. The claimant can read larger print and can frequently, not constantly, use monocular, one-eyed visual acuity for distance. He can frequently, not constantly, perform tasks requiring depth perception or accommodation with the right eye. He cannot have exposure to unprotected heights.

AR 24. Based on this RFC, the ALJ determined Plaintiff could perform past relevant work as a home attendant. AR 29. As such, the ALJ determined Plaintiff had not been under a disability as defined in the Social Security Act from March 23, 2022, through the date of the decision. AR 30. As Plaintiff did not meet his burden, the ALJ did not proceed to step five.[4]

**B. Step Two Impairments**

As noted above, at step two the ALJ determined Plaintiff's severe impairments included Type II diabetes, psoriatic arthritis with arthralgia of the hands, osteoarthritis of the feet, and plantar fasciitis. AR 22. Plaintiff argues the ALJ erred in her analysis of his visual and cardiac impairments as her findings were not supported by substantial evidence, and she failed to consider all of his medically determinable impairments. Pl.'s Br. at 2-3. Plaintiff also argues the ALJ failed to fulfill her duty to fully develop the record by not obtaining the services of an ophthalmologist to decipher the eye examination findings or to perform a consultative examination. *Id.* at 3-4. Finally, Plaintiff argues the ALJ erred by failing to consider his atrial fibrillation (AFib) cardiac condition severe. *Id.* at 4. As such, Plaintiff argues the ALJ's finding that he could perform medium exertion work with no limitations related to his heart condition was not supported by substantial evidence. *Id.* at 5.

**1. Legal Standard**

At step two of a Social Security disability inquiry, "the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). To meet the definition of "severe" under agency rules, an impairment or combination thereof must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1522. "An impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than minimal effect on an individual's ability to work." *Webb*, 433

[4] At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).

F.3d at 686 (emphasis in original). This evaluation at step two is a *de minimis* test intended to "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Under this standard, an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments *only if* his conclusion is "clearly established by medical evidence." *Webb*, 433 F.3d at 687 (quoting *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985)). The burden of proving that an impairment is severe rests with the claimant. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting the claimant bears the burden of showing "at step two that he has a medically severe impairment or combination of impairments").

**2. Analysis**

Plaintiff asserts the ALJ should have classified his visual and cardiac impairments as additional severe impairments. Pl.'s Br. at 2-5. However, the designation of severe or non-severe impairments is not outcome-determinative, as the Ninth Circuit has been clear that the step two inquiry is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen*, 482 U.S. at 146–47). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Id.* at 1048–49. "In fact, '[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (quoting *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Thus, because "step two was decided in [Plaintiff's] favor" he "could not possibly have been prejudiced" by the ALJ's finding at this stage. *Id.* The dispositive question is whether the ALJ later considered the functional limitations imposed by all medically determinable impairments. *See id.*; SSR 96-8p, 1996 WL 374184, at *5. The Court therefore addresses Plaintiff's visual and cardiac impairments through the RFC and symptom analyses below.

**a. Visual Impairments**

The record indicates Plaintiff has a history of vision problems, with retinal detachment, an epiretinal membrane, and aphakia affecting his right eye, and nuclear sclerosis affecting his left

eye. *See, e.g.*, AR 361-65. As of February 2022, he was also found to have a cataract affecting his left eye. AR 376. In March 2022 a corneal scar was observed on the right side. AR 379. With contact lenses, his vision was 20/80-2 on the right and 20/30-2 on the left. *Id.* In August 2022 Plaintiff told his physical therapist his detached retina reduced his vision to 50% and caused difficulty with depth and peripheral vision. AR 607.

In determining Plaintiff's RFC, the ALJ found Plaintiff "can read larger print and can frequently, not constantly, use monocular, one-eyed visual acuity for distance. He can frequently, not constantly, perform tasks requiring depth perception or accommodation with the right eye." AR 24. The ALJ otherwise found "[t]he record does not provide a basis for finding that the claimant's eye impairment has caused greater limitation, especially considering that his best corrected vision is 20/40." AR 27.

Plaintiff argues the visual limitations the ALJ included in her RFC finding were not consistent with any evidence in the record, "which supported qualitative, not just quantitative limits." Pl.'s Br. at 3. He maintains the evidence demonstrates his visual impairments, in combination, impacted his ability to move through the world, causing difficulty with the quality of depth perception and peripheral vision, as well as eye strain/fatigue requiring him to rest his eyes. *Id.* He argues: "These limitations, however, speak only to the amount of time he could perform those tasks, not to the quality or effect of such use. This distinction is important, since the ALJ concluded, without support, that if he only had to use his sight for six hours, not a full eight hours at a time, for depth perception or distance acuity, he would have no other issues related to his vision." *Id.* (internal citations omitted).

Here, the combination of multiple ocular diagnoses, differing acuity measurements, and qualitative visual complaints leaves unresolved questions material to the RFC. The record contains prior administrative medical findings translating some visual evidence into functional restrictions, AR 90-91, 101, which the ALJ discussed but found only partially persuasive, AR 29. The problem, therefore, is not an absolute absence of medical opinion. It is that the ALJ did not adequately explain how the evidence she accepted supported the precise frequency-based restrictions she ultimately selected ("frequent" monocular distance acuity, depth perception, and

accommodation) rather than restrictions addressing the quality, safety, or endurance of those visual functions. AR 24, 29. The RFC assessment must explain how the evidence supports each conclusion and how material inconsistencies or ambiguities were resolved. SSR 96-8p, 1996 WL 374184, at *7.

Plaintiff reported impaired depth and peripheral vision, eye strain, and the need to rest his eyes. *See, e.g.*, AR 56, 66-67, 293-95, 607. The ALJ's decision expressly identified Plaintiff's history of retinal detachment, but it did not separately analyze other documented ocular conditions, including macular scar, cataracts, right-eye epiretinal membrane, aphakia, and left-eye nuclear sclerosis. AR 22, 361, 377. Defendant notes that the ALJ cited exhibits in which those diagnoses appeared. Def.'s Br. at 10-11 (citing AR 27). But citing an exhibit containing a diagnosis is not the same as explaining whether the impairment, alone and in combination with other impairments, produces additional work-related limitations. An ALJ need not discuss every piece of evidence, but must explain why "significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See* 20 C.F.R. §§ 404.1523(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."), 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."); SSR 96-8p, 1996 WL 374184, at *5, 7. The record reflects that Dr. McMillian measured right-eye acuity at 20/200 while Plaintiff wore contact lenses, whereas Dr. Kartha measured 20/70 without lenses. AR 561, 693. A third measurement comes from Plaintiff's treating optometrist, who recorded best-corrected distance acuity of 20/80 in the right eye and 20/40 in the left on March 6, 2022. AR 289. Those differing measurements reinforce the need for a reasoned explanation connecting the evidence to the RFC.

Defendant also argues that the varying acuity measurements do not undermine the ALJ's



United States District Court
Northern District of California

finding that Plaintiff's best-corrected vision was 20/40, pointing to records concerning the left eye. Def.'s Br. at 10. But central visual acuity does not resolve depth perception, peripheral vision, visual endurance, accommodation, or eye fatigue. The ALJ herself recognized that this case involved more than reading acuity by imposing restrictions for monocular distance vision, depth perception, and accommodation. AR 24. The decision also does not address a "Treating Source Summary of Vision Findings" completed by Hoa Tat, O.D., on September 2, 2022. AR 288-90. It diagnoses macular scar, pseudophakia, and retinal detachment in the right eye and cataract in the left; records best-corrected distance acuity of 20/80 on the right and 20/40 on the left; states that the acuity is consistent with the pathological findings; reports that no formal visual field testing has been performed; and gives a prognosis of possible worsening of the left cataract. *Id.* Plaintiff's representative cited this summary to the ALJ, AR 351, yet the decision neither discusses the report nor names Dr. Tat, and its only apparent reference to the exhibit groups it with Plaintiff's own allegation forms. *See* AR 25 (citing "Exs. 3E; 4E" for Plaintiff's allegations). This summary is evidence bearing directly on the impairments Plaintiff contends the ALJ failed to evaluate, and its omission leaves the "frequent" visual restrictions without an explained evidentiary foundation. Because SSR 96-8p requires a narrative explanation tying the evidence to each RFC conclusion, remand is appropriate for the ALJ to reassess the functional effects of Plaintiff's visual impairments, including depth perception, peripheral vision, visual endurance, eye strain, and fatigue. *See Donna K. v. Kijakazi*, 2022 WL 902463, at *7-8 (D. Alaska Mar. 28, 2022) (holding that a restriction to frequent near acuity did not account for additional visual limitations involving very close focusing, clear vision, and critical visual skills).

Plaintiff also argues the ALJ should have obtained an ophthalmologist consult. Pl.'s Br. at 4. The Ninth Circuit requires further development when the evidence is ambiguous or the record is inadequate to permit proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). A specific statement by the ALJ that the record is ambiguous or inadequate is not always necessary if the record itself establishes the problem. *McLeod*, 640 F.3d at 885. Social Security proceedings are "inquisitorial rather than adversarial," and it is the ALJ's "duty to investigate the facts and develop the arguments both for

and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1150-51 (9th Cir. 2001) (failure to develop a triggered record is reversible error). Where the available evidence is insufficient to determine the severity or functional effect of an impairment, the ALJ should obtain a consultative examination, including from a specialist. *Reed v. Massanari*, 270 F.3d 838, 843 (9th Cir. 2001); 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). The visual-impairment regulations themselves contemplate a functional description, not acuity measurements alone. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.00A(1), (4).

In support of his argument, Plaintiff relies on *Clarence Everett M. v. Comm'r of Soc. Sec. Admin.*, 2025 WL 1796155 (D. Idaho June 26, 2025). There, the district court remanded for a specialized consultative examination after the ALJ expressly acknowledged that the visual evidence was insufficient or ambiguous without an ophthalmologist's opinion. *Id.* at *4. That case is distinguishable in part: the ALJ here made no comparable on-the-record statement that she was speculating about Plaintiff's visual functioning. The Court notes, however, that *Clarence Everett M.* did not rest on that statement alone. The court there also relied on the absence of any medical source, ophthalmologist or otherwise, who addressed the functional effect of the claimant's qualitative visual symptoms, *id.*, a feature of the record that is present here as well, see AR 559-62, 692-95. The Court accordingly does not read *Clarence Everett M.* as materially distinguishable so much as non-dispositive: whether a specialist opinion is "reasonably necessary" under 20 C.F.R. § 404.1519a(b) is a question the ALJ should answer in the first instance on the reassessed record. Nor does the governing law create a categorical rule that every visual-impairment case requires an ophthalmologist. *See* 20 C.F.R. § 404.1519a(b) (providing for a consultative examination when the evidence is inconsistent or insufficient and the issue cannot be resolved from the existing record). The Court notes one specific gap. Plaintiff has reported impaired peripheral vision, AR 607, and the RFC contains no field-of-vision restriction, yet the only eye-care specialist to address the question reported that no formal visual field testing had been done and did not indicate that a significant field deficit was unexpected. AR 289. The state

agency consultants rated field of vision as unlimited without identifying any field testing. AR 90. On remand, the ALJ must determine whether the existing evidence can be reconciled sufficiently to assess Plaintiff's visual functioning or whether additional ophthalmologic or other specialist evidence is reasonably necessary.

In sum, remand is appropriate for further evaluation of Plaintiff's visual impairments and their combined functional effects. The ALJ must explain the evidentiary basis for any restrictions involving central or peripheral vision, depth perception, accommodation, visual endurance, eye strain, or fatigue, resolve inconsistencies in the record, and obtain additional specialist evidence if reasonably necessary. The Court does not hold that an ophthalmologist consult is categorically required.

**b. Cardiovascular Impairments**

Plaintiff also argues the ALJ erred by failing to consider his cardiac condition severe. Pl.'s Br. at 4. He notes his AFib was documented with a treadmill test showing moderately impaired functional capacity. *Id.* at 4-5 (citing AR 437). The record does indicate a history of cardiovascular impairments. From November 2021 to June 2022, Plaintiff was seen by a cardiologist for atrial fibrillation, leg pain, dizziness, and occasional shortness of breath. AR 420-38. He was advised to walk, exercise, use compression stockings, and elevate his legs. *Id.* Plaintiff argues the record shows he needs to stop frequently because his heart condition makes him tired, causes shortness of breath, and creates a dramatically increased rapid heartbeat. Pl.'s Br. at 6 (citing AR 47-48, 57-58).

The ALJ's analysis required consideration of the record as a whole, comparing Plaintiff's allegations against the rest of the record evidence. *See* 20 C.F.R. § 404.1529(a) ("we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence"). This is what the ALJ did.

For example, the record shows that in August and October 2022, Plaintiff was "on an excellent walking program with 12-15,000 steps daily" and he "[d]enies" cardiovascular (CV) symptoms of "racing/skipping heart beats, fatigue, lightheadedness, shortness of breath with

exertion, palpitations." AR 832, 835, 845, 847. In April 2023 it was noted that Plaintiff "walks 12K daily" and "reports no fatigue" and "no shortness of breath." AR 702-03. In December 2023 Plaintiff was "walking 10-18K steps/day" seven times each week and he "[d]enies" "racing/skipping heart beats, fatigue, lightheadedness, shortness of breath with exertion, palpitations." AR 903. Plaintiff's AFib was described as "controlled" and his hypertension as "stable" at these visits, too. AR 835, 847, 907. Thus, Plaintiff's claim that he reported no cardiac symptoms at only "a single medical visit," *see* Pl.'s Br. at 7, is inaccurate. The cardiologist notes, when read longitudinally, show that Plaintiff increased his walking capacity over time, and he still denied experiencing the cardiac symptoms he later told the ALJ weakened his ability to walk. The ALJ was entitled to rely on these inconsistencies when finding Plaintiff's testimony about cardiac symptoms was exaggerated. *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (ALJ may "draw inferences logically flowing from the evidence") (internal quotation marks and citation omitted); *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) ("It is not the court's role to 'second-guess' an ALJ's reasonable interpretation" of evidence.) (citation omitted).

Plaintiff argues the number of steps he accumulated over a day does not establish that he could stand or walk for six hours in a workday without additional rest. Pl.'s Br. at 6. The Court agrees that aggregate step counts cannot, without further explanation, answer that question. Plaintiff testified that he could walk only about 200 feet at a time before stopping because of foot pain and, at times, shortness of breath; he did not testify that he could never accumulate a larger number of steps over an entire day. AR 47-48, 68. Daily activity bears on symptom testimony only when the activity is genuinely inconsistent with the claimed limitation. *Ferguson*, 95 F.4th at 1203. The ALJ did not explain how the reported daily step counts demonstrated an ability to sustain standing and walking on a regular and continuing basis without additional breaks. *See* SSR 96-8p, 1996 WL 374184, at *1, 7. Defendant asks the Court to rely on a separate assumption that ordinary workplace breaks would necessarily accommodate Plaintiff's asserted unscheduled rest needs. Def.'s Br. at 4-5. However, that rationale was not invoked by the ALJ, and a reviewing court may not affirm on a post hoc ground. *Ferguson*, 95 F.4th at 1203-04.

The ALJ also considered evidence of conservative treatment that improved Plaintiff's

symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv) & (v). Treatment and improvement are relevant considerations when they bear on the symptom at issue. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Smartt*, 53 F.4th at 500; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008). The ALJ noted conservative treatment for Plaintiff's foot pain, including orthotics, and chart notes describing AFib as controlled on medication. AR 25-26. For example, Plaintiff's hypertension was stable and asymptomatic with medication. AR 26 (citing AR 731, 866). *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling"). And chart notes documented minimal to no AFib symptoms while on medication. AR 26 (citing AR 866); *see also* AR 835, 847 ("Atrial Fibrillation controlled ventricular response, cont[inue] eliquis" medication)); AR 832, 845, 847, 903 ("Denies" cardiovascular symptoms)). Over time Plaintiff increased his walking, hitting 18,000 steps each day while receiving treatment for his various conditions, including AFib which the cardiologist notes described as "controlled" on medication and notes that Plaintiff "feels fine" overall. *See, e.g.,* AR 835, 844, 847, 903. The ALJ also recounted how chart notes documented no to mild symptoms. AR 25-26 (citing AR 866 ("none now"); *see also* AR 703 (no fatigue or shortness of breath and normal cardiovascular exam), 835, 847 ("controlled ventricular response"), 832, 845, 903 (denying cardiovascular symptoms)).

Accordingly, the Court finds no independent reversible error in the ALJ's evaluation of Plaintiff's AFib allegations insofar as it rests on symptom-specific evidence. But the walking-related allegations of pain and a need for rest require separate consideration under the symptom-testimony analysis below.

**C. Subjective Statements**

Plaintiff alleged disability based on a detached retina (right eye), atrial fibrillation (AFib), diabetes, an enlarged prostate, high blood pressure, arthritis and kidney disease. AR 274. He noted that an "imbalance in sight" causes eye pain, and difficulty staying focused. AR 293. His urinary incontinence requires frequent restroom breaks, and arthritis in his hand and foot causes pain with hand use and walking. *Id.* He needs to take breaks while walking just a third of a block because of fatigue and foot pain. *Id.* Computer use causes eye strain, and he has right-sided facial

pain. *Id.* Walking causes "uneasiness in head" because of his sight, pain in his foot, urinary urgency and a "racing feeling" in his chest. *Id.* He noted being able to drive and perform chores for only 30 minutes before needing to rest because of his eyes. AR 294-95. He needs to rest for 10 minutes afterwards. AR 295. He moves slowly and needs handrails to use stairs. *Id.* The medication he uses for his enlarged prostate causes frequent urination. AR 322.

At his hearing before the ALJ, Plaintiff testified to the following. His hands are swelling and discolored and his arthritis is getting worse. AR 47. He can drive for about 30 minutes, otherwise he takes public transportation or his son drives. *Id.* He gets tired walking to the bus stop because of his heart condition, he needs to stop every 200 feet or so to catch his breath, and it hurts to stand or walk because of the arthritis in his foot. AR 47-48.

He and his spouse live with his son because he was scared about what happened with his mother, since he had to resuscitate her and then she died shortly thereafter. AR 46. Before her passing, Plaintiff performed in-home care work because it was for his own mother, even though his symptoms were getting worse. AR 49. His wife helped with the caregiving duties for his mother, and he would probably not be able to perform those tasks anymore because of his hands. AR 55. His eyes get strained and he must rest them after reading or driving. AR 56. He can barely hold any tools or make a fist. *Id.* Walking becomes painful because of his arthritis and plantar fasciitis. *Id.*

His AFib is unpredictable and causes sweating and shortness of breath. AR 57. The AFib symptoms happen about once a month, lasts for an hour to two, and sometimes occur even when he is sitting down. *Id.* When he gets the AFib symptoms he must lie down. AR 58.

He can sit comfortably for about 30 minutes and then his foot gets numb, his legs stiffen, and his hands are constantly swollen. AR 60-61. He cannot stand still for more than 10 minutes before he has to move around. AR 61. He can carry about 25 pounds. AR 62.

Plaintiff goes to the church to help distribute food three days a week for about three hours at a time. AR 63-64. He takes breaks to catch his breath, but helping keeps him from getting sad. AR 65. He is exhausted afterwards with a lot of pain, and must sit down and take pain medication when he gets home. *Id.* His wife does a lot of household chores, but he will accompany her or

United States District Court
Northern District of California

help. AR 63.

Typing, writing and distributing items causes pain in his hands and swelling. AR 64. His medication takes away some of the pain, but not all of it. *Id.* He can use his hands for about 20-30 minutes before needing to rest them for another 30 minutes. *Id.* He noted that his hands were "black and swollen" and that the pain gets to him. AR 66. He gets fatigued and must rest his eyes after about 30 minutes of reading or being on the computer. AR 66-67. He closes his eyes to rest them for about 15 minutes at a time. AR 67. He rests for 30 minutes after going for a half-mile walk. AR 68.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 25. Plaintiff argues the ALJ erred by failing to include any convincing reasons to discredit his subjective symptom testimony. Pl.'s Br. at 5-8.

**1. Legal Standard**

The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014-15 (emphasis in original) (cleaned up). Under this standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (cleaned up). "In other words,

to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021); *see also Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it."). The ALJ must also explain why the cited evidence is inconsistent with the particular symptom alleged; evidence relevant to a different symptom does not suffice. *Ferguson*, 95 F.4th at 1200; *see also Ortiz v. Bisignano*, 179 F.4th 691, 698-99 (9th Cir. 2026) (holding that the ALJ erred in rejecting a pain-based limitation on the basis of gait, strength, and range-of-motion testing where those routine observations said nothing of the claimant's pain, because a claimant "might be able to push herself to exhibit full strength or range of motion, or a normal gait, while also experiencing pain"). Thus, record citations used to discredit symptom testimony must address the symptom at issue. *Ortiz*, 179 F.4th at 705-06.

**2. Analysis**

**a. Walking and Cardiovascular Symptoms**

Concerning Plaintiff's complaints about walking and his cardiovascular symptoms, the ALJ found:

> Beginning with the impairments affecting his feet, the medical evidence documents the claimant's treatment for osteoarthritis of the feet and plantar fasciitis with complaints of pain (Ex. 21F-49). December 2022 x-ray imaging of the claimant's feet revealed possible fasciitis; 1.2 cm heel spur; degenerative spurring at the dorsum of the tarsals at the navicular cuneiform articulation 4; and tiny spur at the base of the fifth metatarsal (Ex. 25F-32). The above Residual Functional Capacity accommodates the claimant's foot impairments by limiting him to a "medium" exertional level with the postural limitations set forth therein.
>
> The record does not provide a basis for finding that the claimant's foot impairments have caused greater limitations, especially considering that the medical evidence documents his reports of engaging in an excellent walking program with 12,000-15,000 steps daily (Exs. 14F-6; 25F-5). In fact, other chart notes from December 2023 document that he was reportedly walking 10,000-18,000 steps daily, 7 days weekly (Ex. 25F-73). Additionally, the claimant has demonstrated a normal gait with normal range of motion, motor strength, and other neuromuscular findings of the lower extremities (Exs. 11F-4; 14F-1, -7; 17F-4, -5). While podiatry treatment records from February and August 2023 as well as in February 2024 document the claimant's complaints of foot pain, these records also

> document that he has required only conservative treatment such as orthotics and that his neurological foot examinations have been normal including reflexes and sensation (Ex. 20F-2, -5, -6, -8). The claimant's allegations regarding the intensity, frequency, and limiting effects of the impairments affecting his feet are not consistent with these records.
>
> ***
>
> As for the claimant's "non-severe" atrial fibrillation, he testified at the hearing that this only occurs about once a month for one or two hours at a time. Testing including echocardiogram revealed only mild findings without evidence of pericardial effusion and only rare premature ventricular contractions (PVCs) (Ex. 6F-28, -29). Other workup has revealed mild, ecogenic, scattered plaque of the native arteries of the lower extremities without evidence of hemodynamically significant stenosis as well as non-obstructive peripheral arterial disease of the lower extremities but also that all organs are within normal limits (Ex. 6F-19, -22, -24). Chart notes also document minimal symptoms; indeed, chart notes from January 2023 document no symptoms (Exs. 18F-7; 25F-36). As such, the above Residual Functional Capacity accommodates this by limiting the claimant to a "medium" exertional level with the postural limitations set forth therein.

AR 25-26.

Plaintiff argues the ALJ erred in discounting his statements about his need to take breaks after about 30 minutes of walking because of arthritis, plantar fasciitis in his feet, and his heart conditions. Pl.'s Br. at-5-6.

The ALJ identified valid, symptom-specific evidence concerning Plaintiff's AFib. Plaintiff alleged AFib caused shortness of breath, fatigue, a racing heartbeat, and a need to stop or lie down. AR 47-48, 57-58. However, the cardiology records the ALJ relied on repeatedly document denials of racing or skipping heartbeats, fatigue, lightheadedness, exertional shortness of breath, and palpitations, and describe the AFib as controlled. AR 703, 832, 835, 845, 847, 866, 903. Those records address the symptoms Plaintiff alleged and therefore provide a permissible basis to discount the alleged severity of the AFib symptoms. *See Ferguson*, 95 F.4th at 1200; *see also Edward D. v. Saul*, 2021 WL 4240415, at *3 (D. Or. Sept. 17, 2021) (affirming reliance on records describing persistent AFib as stable and rate-controlled where those records conflicted with testimony that the episodes were debilitating).

The analysis of Plaintiff's foot pain and walking-related need for rest is different. Plaintiff did not claim that he was unable to walk at all; he testified that pain and other symptoms required

him to stop and rest after limited periods of walking. AR 47-48, 56, 68. The ALJ relied heavily on treatment notes reporting 10,000 to 18,000 steps in a day. AR 25. But those aggregate step counts do not reveal how continuously Plaintiff walked, how often he stopped, how long he rested, or whether he could sustain workplace standing and walking requirements. There must be an actual inconsistency between the activity and the claimed limitation. *See Ferguson*, 95 F.4th at 1203. Without an explanation connecting the daily step totals to Plaintiff's break-based allegation, the step counts do not provide a clear and convincing reason to reject that testimony. The December 7, 2023 visit the ALJ cited illustrates the difficulty. At that visit, in a "Risk Factors" intake block, the provider listed "Type of Exercise: walking 10-18 K steps/day," alongside an entry for "Exercise Counseling." AR 903. This same chart note records that Plaintiff complained of "joint pain, joint swelling, back pain, stiffness and arthritis" in both hands, the left knee, and the right foot, and that intake staff recorded "Patient in pain? Yes," located in the "Hands, shoulders, Feet, Knees," at an intensity of 6 and "throbbing" in character. AR 904-05. An ALJ may not rely on isolated favorable entries while passing over contrary findings in the same record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). A reported activity can undermine symptom testimony where the ALJ identifies a real conflict between the activity and the specific limitation assessed. *See Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (activities bear on credibility "[o]nly if the level of activity were inconsistent with Claimant's claimed limitations"); *Garrison*, 759 F.3d at 1016 (ALJs "must be especially cautious" here, because activities consistent with disability "will often be consistent with doing more than merely resting in bed all day"); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a claimant need not "vegetate in a dark room"). The Court recognizes the contrary considerations Defendant presses: daily activities may discredit testimony "to the extent that they contradict claims of a totally debilitating impairment," *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by regulation*, and a reviewing court may not second-guess a rational reading of the record, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Smartt*, 53 F.4th at 499-500. But Plaintiff did not allege a totally debilitating

impairment, and the ALJ did not articulate the conflict she perceived between a daily step total and an asserted need for unscheduled rest. The ALJ could also consider treatment and improvement, but only insofar as they bear on the symptom being discounted. *Id.* at 1200; *Ortiz*, 179 F.4th at 705-06. The record shows orthotic treatment for Plaintiff's feet and medication that improved some symptoms. AR 25-26. That evidence is relevant. However, the decision does not explain how those measures eliminated or materially contradicted Plaintiff's asserted need to stop and rest because of activity-induced foot pain. And successful physical therapy for cervical complaints does not address foot pain or walking endurance in the workplace. *See Ferguson*, 95 F.4th at 1200 (requiring evidence tied to the symptom at issue); *see also Crystal E. v. Comm'r, Soc. Sec. Admin.*, 2020 WL 2490092, at *5 (D. Or. May 14, 2020) (rejecting reliance on approximately 10,000 steps per day as inconsistent with a walking limitation because the steps could be accumulated over the day with numerous rest breaks).

The ALJ further relied on normal gait, range of motion, motor strength, sensation, reflexes, and other neuromuscular findings to reject Plaintiff's allegations of significant lower-extremity pain. AR 25. But this reasoning is insufficient to the extent those routine findings do not address the pain underlying the claimed limitation. *Ortiz*, 179 F.4th at 705-06. A claimant may demonstrate normal strength, gait, or range of motion during an examination and still experience pain that limits the ability to sustain work activity. *Id*. The record cited by the ALJ does not establish that the normal gait and strength observations measured Plaintiff's pain or his ability to continue walking without rest.

Plaintiff argues the ALJ improperly relied on the characterization of his treatment as conservative. Pl.'s Br. at 5. However, the Court need not decide whether every treatment is properly labeled as conservative, as the ALJ may consider the type and effectiveness of treatment, and improvement with treatment can undermine allegations of disabling symptoms when the improvement bears on the limitation asserted. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Smartt*, 53 F.4th at 500; *Tommasetti*, 533 F.3d at 1039-40. Here, on remand, the relevant question is whether the treatment evidence actually contradicts Plaintiff's claimed endurance and break limitations.

In sum, the Court affirms the ALJ's evaluation of Plaintiff's AFib allegations insofar as it

rests on symptom-specific cardiology evidence, but it cannot affirm the rejection of Plaintiff's walking-related pain and rest-break testimony on the reasoning given. That portion of the symptom analysis must be reconsidered on remand.

**b. Hands**

Concerning Plaintiff's complaints about his hands, the ALJ found:

> Turning to the claimant's arthralgia of the hands, the medical evidence documents the claimant's psoriatic arthritis and other hand impairment symptoms including pain and swelling (Exs. 11F-4; 13F-6; 17F-4). Notably, chart notes from April 2023 document that the claimant's fingers appeared with deformities of nail dystrophy and dactylitis (Ex. 21F-49, -52, -53). The above Residual Functional Capacity accommodates the impairments affecting the claimant's hands by limiting the use of his hands for handling, fingering, and feeling, as well as by precluding the climbing of ladders, ropes, or scaffolds.
>
> The record does not provide a basis for finding that the impairments affecting the claimant's hands have caused greater limitations. Rather, the claimant retains normal grip strength and December 2022 x-ray imaging of his hands were normal including joint spaces (Exs. 11F-4; 17F-5; 25F-31). Further, the medical evidence documents significant improvement in his hand and other joint symptoms with medication. In April 2023, the treatment provider changed his medication and the claimant reported improvement at a follow-up the next month (Ex. 21F-61). Subsequent records from August 2023 and February 2024 document that he continued to have improvement in his symptoms, including that his joints were feeling at least 50% better since starting medication and that he experienced morning joint stiffness for less than 5 minutes (Ex. 21F-67, -73). The claimant's allegations regarding the intensity, frequency, and limiting effects of the impairments affecting his hands are not consistent with these records.

AR 26.

Plaintiff argues he never claimed to be unable to use his hands, only that they became painful after use and he would need to rest them. Pl.'s Mot. at 7 (citing AR 47, 55, 60-61, 64, 66, 293, 607, 855). Plaintiff is correct that normal grip strength and unremarkable imaging would not, standing alone, contradict testimony that hand use becomes painful and swollen over time. *See Ortiz*, 179 F.4th at 699-700; *Ferguson*, 95 F.4th at 1200-01. But the ALJ did not rest on objective findings alone. She identified those findings, AR 25-26 (citing AR 561, 695, 861), alongside evidence bearing directly on the limitation Plaintiff asserts. The ALJ noted Plaintiff had "significant improvement in his hand and other joint symptoms with medication" such that it

produced 50% symptom improvement and he had "less than 5 minutes" of joint stiffness in the mornings. AR 26 (citing AR 806, 812, 818). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"); *Heather L. v. Comm'r, Soc. Sec. Admin.*, 2024 WL 472052, at *5 (D. Or. Feb. 7, 2024) (affirming discounting of the alleged degree of handling and fingering limitations where psoriatic-arthritis hand pain and swelling improved with treatment); *Bowman v. Colvin*, 228 F. Supp. 3d 1121, 1130-31 (D. Or. 2017) (ALJ permissibly considered effectiveness of medication in rejecting claimant's subjective complaints about carpal tunnel syndrome, despite claimant's subjective complaints of pain and record showing multiple hand surgeries). Indeed, "neither [Circuit precedent] nor the regulations prohibit ALJs from doing what they do all the time: relying on any contradictions between a claimant's subjective symptom testimony and the objective medical evidence in the record to discount the symptom testimony." *Smartt*, 53 F.4th at 498 n.1. Under this authority, the Court finds the ALJ drew the necessary distinctions between Plaintiff's allegations about how his symptoms limited him and what the objective evidence showed. AR 25-26. This conclusion is limited to the reasons the ALJ actually gave. It does not preclude reconsideration of the hand-related limitations on remand in light of the combined effect of Plaintiff's impairments, particularly because the vocational expert testified that a restriction to occasional bilateral handling and fingering would preclude the home-attendant work entirely. AR 75; *see* 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."); SSR 96-8p, 1996 WL 374184, at *5, 7.

The ALJ did not find that Plaintiff was unrestricted, either. Within the RFC for medium work, the ALJ restricted his postural activities, exposure to hazards, handling, fingering, and feeling to account for his impairment-related limitations. AR 24. This permitted him to perform his past work as a home attendant, which he performed at an even less strenuous, light exertion

capacity. AR 29-30, 49, 70, 72-73. *See* 20 C.F.R. §§ 404.1560(b)(2)-(3) (claimant not disabled if he can do past work as he "actually performed it"), 404.1567 (defining medium and light exertion work). Because the RFC must be reassessed on remand, however, the Court expresses no view on whether Plaintiff can perform that work.

The Court therefore finds the ALJ's decision as to Plaintiff's testimony about his hands has the support of substantial evidence.

**c. Vision**

Concerning Plaintiff's testimony about his vision, the ALJ found:

> I have also accommodated the claimant's history of retinal detachment and vision impairments by limiting him to larger print for reading (Exs. 1F; 3F; 4F; 11F-4). The record does not provide a basis for finding that the claimant's eye impairment has caused greater limitation, especially considering that his best corrected vision is 20/40 (Exs. 11F-2; 17F-3). While the claimant has alleged having significant eye strain limiting his daily activities, such as driving, treatment records do not reflect such complaints (Exs. 3F; 4F; 11F-5; 17F; 24F).

AR 27. However, as discussed above, the ALJ did not adequately explain how the evidence she accepted supported the precise frequency-based restrictions she ultimately selected. The evidence demonstrated that Plaintiff's visual impairments, in combination, could cause difficulty with the quality of depth perception and peripheral vision, as well as eye strain/fatigue requiring him to rest his eyes. AR 56, 66-67, 293-95, 607. While the ALJ found Plaintiff capable of work requiring frequent use of "monocular, one-eyed visual acuity for distance" and frequent tasks "requiring depth perception or accommodation" with the right eye, AR 24, these limitations speak only to the amount of time he could perform those tasks, not to the quality or effect of such use. Plaintiff reported impaired depth and peripheral vision, eye strain, and the need to rest his eyes. *See, e.g.*, AR 56, 66-67, 293-95, 607. The vocational expert testified that a person who, after 30 minutes of near-acuity use, required a 30-minute break from near visual acuity could not perform the home-attendant job or other full-time competitive work. Asked whether the companion position, which is the only other job the vocational expert identified and the one to which she testified Plaintiff's skills would transfer, would remain available in the same circumstances, the expert answered that it would not. AR 72, 75-76. The vocational expert also testified that more than 9% off-task time

would not be tolerated. AR 76. The ALJ's second stated reason, that the treatment records "do not reflect such complaints" of eye strain, AR 27, is also insufficient. An ALJ may not discount symptom testimony because the record lacks affirmative corroboration of the symptom. *See Ferguson*, 95 F.4th at 1201 (an ALJ "cannot rely on an absence of positive medical evidence to discredit a claimant's subjective symptom testimony"); *Smartt*, 53 F.4th at 498 (an ALJ may not demand "positive objective medical evidence fully corroborating every allegation") (cleaned up). And as discussed above, remand is appropriate for further consideration of Plaintiff's RFC as it pertains to any vision limitations. As Plaintiff's subjective complaints will likely factor into this analysis, remand is also appropriate for the ALJ to reevaluate Plaintiff's symptom testimony concerning eye strain, fatigue, and the need to rest his eyes. The Court does not find that Plaintiff's alleged limitations render him disabled, but when considered with the medical evidence of record and the vocational testimony, a failure to evaluate them properly is not harmless.

**d. Urination**

Finally, Plaintiff argues the ALJ failed to address urinary frequency and incontinence, which he attributed in part to medication and which he alleged required additional bathroom breaks. Pl.'s Br. at 8 (citing AR 293, 322). Defendant argues the medical evidence of record did not document this condition. Def.'s Br. at 11-12.

Plaintiff reported urinary incontinence and frequent urination attributed in part to medication. AR 29. The disability forms attribute the frequent urination to a specific medication, Proscar, prescribed for the enlarged prostate. AR 322. And the urology records document more than a complaint: a June 2022 assessment of "BPH with urinary obstruction/lower urinary tract symptoms" and "[i]ncomplete bladder emptying," a trial of Flomax, and a urodynamic uroflow study measuring a post-void residual of 108 milliliters. AR 393-94. Defendant's assertion that "the objective record did not document this condition or these complaints," Def.'s Br. at 11, is therefore inaccurate. The Court recognizes that other treatment notes record denials of urinary frequency and incontinence, *e.g.*, AR 904, which is precisely the kind of conflict the ALJ was required to resolve. The record therefore contains support for urinary symptoms, although it does not clearly quantify the frequency or duration of additional restroom breaks or their vocational



United States District Court
Northern District of California

effect. Courts within this Circuit distinguish ready restroom access from frequency or productivity restrictions: ready access may be inadequate where evidence establishes frequent or unpredictable breaks, *see X.S. v. Kijakazi*, 2022 WL 17823984, at *7-8 (N.D. Cal. Dec. 20, 2022); *Woods v. Comm'r Soc. Sec. Admin.*, 2015 WL 8780538, at *3 (D. Or. Dec. 14, 2015), but may suffice where the evidence shows urgency without frequency or duration, *see Hopper v. Colvin*, 2014 WL 6473566, at *5 (D. Or. Nov. 14, 2014). Here, the ALJ did not address Plaintiff's urinary allegations, so the Court cannot determine whether the ALJ found them unsupported, insufficiently specific, or inconsistent with other evidence, and it cannot supply a rationale after the fact. *See Ferguson*, 95 F.4th at 1203-04; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009). On remand, the ALJ must evaluate Plaintiff's urinary symptoms and determine whether the evidence supports any additional bathroom-break or off-task limitation in the RFC.

**D. Remedy**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits. The Social Security Act permits courts to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019. "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, further administrative proceedings are appropriate. Outstanding issues remain

regarding the functional effects of Plaintiff's visual impairments, the extent to which foot pain causes endurance or rest limitations, and whether urinary symptoms require additional bathroom breaks or off-task time. Plaintiff seeks only a remand for further proceedings, not an award of benefits. *See* Pl.'s Br. at 1, 8; Reply at 10, ECF No. 16. In any event, the credit-as-true conditions are not met, because it is not clear that the ALJ would be required to find Plaintiff disabled if the improperly evaluated evidence were credited. *See Garrison*, 759 F.3d at 1020; *Trevizo v. Berryhill*, 871 F.3d 664, 682-83 (9th Cir. 2017).

## VI. CONCLUSION

For the reasons stated above, the Court **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further administrative proceedings consistent with this order. On remand, the ALJ shall reevaluate Plaintiff's visual impairments and visual RFC; determine whether additional ophthalmologic or other specialist evidence is reasonably necessary; reevaluate Plaintiff's walking-related symptom testimony; evaluate Plaintiff's allegations of urinary frequency and any resulting bathroom-break or off-task limitation; and proceed through the sequential evaluation as appropriate. The ALJ shall also evaluate the combined effect of Plaintiff's severe and non-severe impairments on any need for additional breaks or off-task time, and shall obtain supplemental vocational testimony if the reassessed residual functional capacity differs from the capacity previously assessed. *See* 20 C.F.R. § 404.1545(a)(2); SSR 96-8p, 1996 WL 374184, at *5, 7. Nothing in this order limits the ALJ's authority to reconsider the record as a whole on remand. *See* 20 C.F.R. § 404.983.

The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: October 19, 2026



THOMAS S. HIXSON
United States Magistrate Judge